**ROBERTS, ESTATE OF, In Re**

Ohio Appeals, 2nd Dist, Franklin Co

No 3339. Decided July 16, 1941

Luther L. Boger, Columbus, special counsel for the estate.

J. Maxwell Maher, Columbus, for heirs of Joseph L. Roberts, appellee.

John H. Matthews, Columbus, for appellant.

## OPINION

By GEIGER, PJ.

This matter is before this court on appeal on questions of law from a final judgment of the Probate Court wherein that court found upon the issues joined in favor of the estate against the petitioner, K. C. Ice. To this order notice of appeal was given to the Court of Appeals.

The petition which gave rise to this controversy was filed in the Probate Court of Franklin County and recites that Ice was appointed as the administrator of the estate of Joseph L. Roberts, and that he has a claim against the estate upon which no payments have been made.

He alleges that he is a physician; that Roberts lived in his house in Vinton, Ohio, where he received board, lodging, nursing and medical care from January 31, 1932 to about March 1, 1933, and from that date lived in the house of petitioner until the date of his death, June 28, 1940, said home being a farm property located near Brice, Ohio, "purchased by both petitioner and the said Joseph L. Roberts, deceased, in order to provide a home in which the petitioner together with his family might live and take care of the said Joseph L. Roberts for the remainder of his life in rural surroundings which he desired, and provide him with all necessary medical care, nursing and board, he then and at all times being ill and advanced in years, which services the petitioner had rendered as set forth."

Petitioner's claim is set out substantially as follows:

First, Medical service, which was continuous and necessary from January 31, 1932, to the day of his death, during all of which time he suffered from certain ills that required nursing care, administration of medicine and other medical incidentals, which was reasonably worth $3.00 per day, or $9211.00.

The second claim is for nursing and care of Roberts, consisting of those things incidental to the proper care of a sick person, all of which services were rendered at his instance and request by the claimant's wife in the course of her wifely and household duties. Plaintiff says that the services in Item II are reasonably worth the sum of $1.00 per day for the period mentioned, or the sum of $3067.00.

Third, the claimant states that board for the period mentioned was furnished by the petitioners to Robert at his instance and request, which petitioner says was of the reasonable value of 75c per day for each of the 3067 days, or the sum of $2300.25.

Fourth, it is stated that the petitioner claims on account of money paid out for miscellaneous services rendered on behalf of Roberts at his instance and request during the period the sum of $424.27. The total claim set out is $15,002.52.

The exhibit covering the $424.27 is attached to the petition.

An answer was filed to this petition by certain defendants, heirs at law of Joseph L. Roberts, to the effect (1) That said petitioner did not render the services alleged; (2) that such services, if rendered, were not performed under any contract with the decedent, either express or implied; (3) that said services, if rendered, are not of the value claimed in the petition; (4) that the cause of action of the petitioner, if any, is barred by the statute of limitations governing contracts not in writing; (5) that if the petitioner has rendered services as alleged in the petition, he has been fully compensated.

In this court there is filed a motion to dismiss which was overruled, but the plaintiff was given leave to file a Bill of Exceptions, this court holding that the cause was one at law and not in equity.

We have read the bill of exceptions and briefs. The bill of exceptions briefly discloses that in 1932 Joseph L. Roberts whose estate is now being administered by Dr. K. C. Ice, came to live at the home of Dr. Ice in Vinton, Ohio. Mr. Roberts was an uncle of Dr. Ice. In 1932 Mr. Roberts began negotiations for the purchase of a farm at Brice, Ohio, for $3500.00 in cash, the farm being bought from a Martha A. Groves. The decedent paid for the same with Liberty bonds, taking title to the farm in his own name. The deed to the farm was prepared in the office of one Lee P. Johnston, a Columbus attorney. It appears that Mr. Ice and Mr. Roberts on the same day, returned to Mr. Johnston's office and discussed with Mr. Johnston the matter of a contract to be signed between them under which Dr. Ice was to take care of Mr. Roberts during the balance of his life, and that Roberts was to compensate Dr. Ice by deeding him the Brice farm. Mr. Johnston testified (Record, p. 71) to the effect that when Ice and Roberts were present Roberts said he wanted Ice to have his farm for taking care of him and he wanted some kind of an agreement. Roberts said he wanted to be sure that Ice got the farm. Roberts said that Ice was to move on the farm and was to have all he could make from the crops, that he was to make his home with Roberts and furnish him board and nursing and whatever care and attention he needed. Thereupon the decedent deeded the Brice farm to Dr. Ice, a life estate being reserved to Mr. Roberts. Thereupon they all moved to the Brice farm and took possession thereof where they lived until Mr. Roberts' death, the farm by the terms of the deed now being entirely owned by Dr. Ice.

All the testimony is to the effect that in living on the Brice farm they lived as a family. The old gentleman by reason of his advancing years and certain afflictions was a care, requiring some special attention. At the time they moved to the farm Roberts was about seventy-five years of age and his expectancy of life was not long, but he lived far beyond that expectancy.

The contract between the parties with reference to the farm was more or less a gambling proposition, Ice agreeing to take care of Roberts during his lifetime, but not expecting him to live many years.

In his petition Dr. Ice alleges that the Brice farm was purchased by both petitioner and Roberts "in order to provide a home in which the petitioner

together with his family might live and take care of Roberts for the remainder of his life in rural surroundings which he desired and provide him with all necessary medical care, nursing and board, he then and at all times being ill and advanced in years". This allegation of the petition seems to be in harmony with the testimony of Johnston, (which we hold to be competent) in reference to the purpose for which the farm was purchased.

Mrs. Ice testified that she, as the wife of the Doctor, performed certain services for the decedent in the absence of the Doctor, for which the Doctor files a claim. We do not understand why, if anything was due Mrs. Ice, it should be collected by the Doctor. There is no showing of assignment. The explanation that occurs to us is that it was necessary to have testimony supporting the contract that the services were to be paid for, and that neither Dr. Ice nor his wife could testify if each had a claim against the decedent. By the device of surrendering to the husband the amount that would be due to the wife for the services rendered by her it was sought to secure her testimony, which was offered and received by the Court. (Any error that might have been committed by the court in permitting Mrs. Ice to testify was not prejudicial to the claim asserted by Ice). Mrs. Ice testifies in support of the claim that there was a contract by which Roberts was to pay for the services rendered in addition to paying for the farm, that he made the statement that he did not want his money divided. Two deeds are presented, the first from Martha A. Groves to Joseph L. Roberts describing the property as containing 40 acres. The deed was dated on the 20th day of September, 1932. The second deed is from Joseph L. Roberts of the village of Vinton in the County of Gallia, to Kromer C. Ice, of the same premises under the same date. The habendum clause of this deed is to Kromer C. Ice after decease of the grantor. The warranty is general except as above stated.

It occurs to the court that the only contract concerning which there is persuasive evidence is that testified to by Johnston and supported by the subsequent action of the parties and evidenced by the two deeds. Ice must have realized that if he left Vinton, where he was a practicing physician and went to Brice located in Franklin County, that he would be required to give up his practice and establish a new clientele in a new territory. Nevertheless this was done and the parties continued to live there until June 28, 1940, when the old man died, probably leaving a must larger estate than Ice knew of at the time he made the contract. Ice now seeks to be paid a total of $15,002.52 in addition to which he has had the use of the farm since 1932 and now has absolute title thereto.

The most that can be said of the evidence on behalf of the specific contract is that Mrs. Ice testified that she expected to be paid and would not have performed the services that she did unless there was such expectation. There appears to be no evidence that Roberts agreed to pay anything or agreed to make a will. He probably was of the impression that Ice was sufficiently compensated by receiving the real estate for which he, Roberts, paid $3500.

On the whole, we conclude that the parties lived together as a family; that it was contemplated that Roberts be cared for as long as he lived in consideration of which Ice secured in advance a deed to the farm upon which he lived together with Roberts for the eight years until the death of Roberts.

We are of the opinion that the conditions under which the parties lived was that involving family relationship and that in order to establish a claim for services for the care of Roberts a contract must be shown by clear and convincing evidence. To prove such a contract by the requisite evidence, Ice has failed. **Hinkle et v Sage, 67 Oh St 256; Merricks v Ditzler, 91 Oh St**

256; Arns, Exr. v Disser, 40 Oh Ap 163. It will be at once suggested that these three cases involve a claim by one coming into the family, to collect for services rendered to a member of the family. In the case at bar the collection is sought to be made by Dr. Ice, who was nominally the head of the family, from the estate of the one who came into and became a part of the family. We do not believe that this condition is sufficient to change the rule that is announced in the above cited cases.

We are of the opinion that the court below did not commit error in disallowing the claim for the care bestowed upon Roberts, including the medical services furnished to him and the services alleged to have been furnished to him by the wife for which Ice now seeks to recover. However, it will be observed that the petition filed with the Probate Court has a fourth asserted claim, an account for money paid out and expended and miscellaneous services rendered on behalf of Roberts at his instance and request during the periods mentioned in the petition, a copy of which account is attached. The first item of the account is under date of February 9, 1932, and the account continues up to and including May 3, 1935, totalling $424.27. Many items of the account are for trips taken by Ice, presumably upon behalf of Roberts. It also includes the cost of certain special necessary appliances required on account of the sickness of Roberts. It also includes the payment of lawyer's fees in a divorce case (Presumably that of Roberts). There are also certain taxes, one-half of which is charged to Roberts; and claims for trees planted on the farm as well as for a line fence. In all the matters incident to the care of the farm Roberts is charged with one-half. Inasmuch as he was the owner of the life estate during that period and Ice was the owner of the fee, subject to such life estate, such charges would be proper if sufficiently proved. The only evidence that we find touching these matters is an account book introduced by Ice in support of his claim. In it we find entries in reference to the matters set forth. The account book offered has certain indications that the entries were not made at the time the expenditures were made but that they are set down all at one time, probably from memory or possibly from other notations. However, there is no evidence contradicting this account, and inasmuch as it relates to matters not incident to the contract between the parties in relation to care and medical attention it need not be proved by a degree of evidence required to establish a contract for compensation for personal services.

We have arrived at the conclusion that as to this cause of **Headnote 2.** action the court should have allowed the same as a just claim against the estate. To this extent the decision of the court below will be reversed.

Cause remanded to the Probate Court with instructions to allow as a claim against the estate the account of $424.27, and that the balance of the claim be denied.

BARNES & HORNBECK, JJ., concur.